**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**SYED QUADRI,**

    **Plaintiff,**

    **v.**　　　　　　　　　　　　　　　　　　Case No. 2:10-CV-733
　　　　　　　　　　　　　　　　　　　　　　**MAGISTRATE JUDGE KING**

**OHIO DEPARTMENT OF
TRANSPORTATION,** *et al.,*

    **Defendants.**

**OPINION AND ORDER**

This matter is before the Court, with the consent of the parties pursuant to 28 U.S.C. § 636(c), for consideration of the Defendants' *Motion to Dismiss*, Doc. No. 3. For the reasons that follow, the motion is granted in part and denied in part.

**I.**

Plaintiff Syed Quadri ["Plaintiff"] brings this action alleging that he has been discriminated against on account of his age, national origin, race and religion, and that he has been the victim of retaliation by his employer, Defendant Ohio Department of Transportation ["ODOT"]. Plaintiff asserts claims under 42 U.S.C. § 1983 as well as Title VII of the Civil Rights Act of 1964 ["Title VII], 42 U.S.C. § 2000e, *et seq.* Plaintiff also raises state law claims of discrimination under R.C. § 4112.02; hostile work environment; violation of public policy, civil conspiracy, defamation and bad faith. In addition to ODOT, defendants in this action include Jolene M. Molitoris, Director of ODOT; Gordon Proctor, former Director of ODOT; Jeff

Hisem, Administrator; and Jennifer McAllister and Thomas Lyden, ODOT supervisors. The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343 and 1367.[1]

Plaintiff, who is seventy years old, is a native of India and is an adherent of the Islamic faith. *Complaint*, Doc. No. 2, at 2. Plaintiff has been employed by ODOT for approximately twenty-six years and currently holds the position of Transportation Technician 3 in the estimating division. *Id.,* at ¶¶ 4, 13.

In his *Complaint*, Plaintiff alleges that he has been discriminated against on account of his religion, race, national origin and age and that he has been retaliated against for having filed complaints with the Ohio Civil Rights Commission. *Id.,* at ¶¶ 11, 12. According to Plaintiff, his "evaluations have consistently been unsatisfactory as compared to those evaluations given to his similarly situated co-workers." *Id.,* at ¶ 16. Plaintiff further alleges that he is held to a different standard of performance than his co-workers on account of his religion, age, race and national origin. *Id.* Plaintiff also claims that, due to his filing of complaints, he has been "harassed by his supervisors and management." *Id.* Plaintiff claims that these instances of discrimination and harassment "dat[e] back to January 2002" and continue to the present. *Id.,* at ¶¶ 17, 23.

Plaintiff cites five particular instances of alleged discrimination in his *Complaint*. He claims that, on March 8, 2007, his supervisor Defendant McAllister charged him with a work rule violation for displaying "rude and disrespectful conduct to a manager" after a confrontation over Plaintiff's break time. *Id.,* at ¶ 18. On July 19, 2007, Plaintiff was suspended from work for ten days for allegedly "failing to meet work standards, disobedience, failure to follow

---

[1] Plaintiff is currently proceeding without the assistance of counsel. However, the case was filed by counsel acting on behalf of Plaintiff and the motion to dismiss presently before the Court was fully briefed prior to the withdrawal of Plaintiff's former attorney. *See Order*, Doc. No. 22.

prescribed work policies and unauthorized absence." *Id.*, at ¶ 19.  On October 15, 2007, Plaintiff requested vacation time to travel to India but Defendant McAllister allegedly "purposely delayed approving [the] request so as to deny the plaintiff an opportunity to return to his native land, India, and also an opportunity to practice his religious beliefs, Islam." *Id.,* at ¶ 21.  On October 18, 2007, Plaintiff was "verbally counseled" for working beyond the normal work hours of 8:00 a.m. to 5:00 p.m.  *Id.,* at ¶ 23.  According to Plaintiff, he was "singled out" for this discipline due to his age, religion, race and national origin.  *Id.*  On June 28, 2010, Plaintiff was counseled for "requesting time off by voice mail instead of talking directly to his supervisor."  *Id.,* at ¶ 23.

In addition to the above instances of alleged discrimination, Plaintiff claims that, "on numerous occasions [he] has been questioned [ ] and comments [have been] made to him by defendant(s) regarding the fact that he should retire."  *Id.*, at ¶ 24.  According to Plaintiff, the comments were made in the presence of co-workers and "were intended to embarrass [Plaintiff], harass him, and force him into retirement."  *Id.*  Plaintiff also alleges that, "on numerous occasions [he] has been harassed and subjected to unequal terms and conditions of employment . . . based upon his religious beliefs and the fact he had to go to Human Resources to have his flexible work schedule approved so he could participate in his religious ceremonies on Fridays . . . ."  *Id.,* at ¶ 25.

Based on the foregoing, Plaintiff asserts a claim under 42 U.S.C. § 1983 for denial of equal protection by virtue of the alleged "intentional[ ] discriminat[ion] . . . on the basis of [Plaintiff's] age, race and national origin and ancestry."  Plaintiff also includes religion and retaliation as bases for the claimed denial of equal protection.  *See* Count 2,[2] *Complaint*, at ¶¶ 28,

---

[2]The Court notes that the *Complaint* begins with Count 2.

30. In Count 3, Plaintiff alleges the deprivation of procedural due process "as guaranteed and outlined in Defendants' handbook on employment policies and practices." *Id.*, at ¶ 33. In Count 4, Plaintiff claims retaliation in violation of Title VII. Counts 5 and 6 allege violations of R.C. § 4112. In Count 7, Plaintiff alleges a violation of Ohio public policy. Count 8 asserts a claim of civil conspiracy; Count 9 asserts a claim of defamation; and Count 10 asserts a claim of bad faith.

Defendants move to dismiss these claims pursuant to Fed. R. Civ. P. 12(b)(1), (6). In the alternative, Defendants invoke the doctrine of qualified immunity. The Court now addresses the merits of this motion.

## II.

Defendants move to dismiss Plaintiff's *Complaint* for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. A motion to dismiss under Rule 12(b)(6) attacks the legal sufficiency of the complaint. *Roth Steel Prod. v. Sharon Steel Co.*, 705 F.2d 134, 155 (6th Cir. 1983); *Carter v. Welles-Bowen Realty, Inc.*, 493 F. Supp. 2d 921, 923 (S.D. Ohio 2007). In determining whether dismissal on this basis is appropriate, the complaint must be construed in the light most favorable to the plaintiff, and all well-pleaded facts must be accepted as true. *See Bower v. Federal Express Corp.,* 96 F.3d 200, 203 (6th Cir. 1996); *Misch v. The Cmty. Mutual Ins. Co.,* 896 F. Supp. 734, 738 (S.D. Ohio 1994). Recently, the Supreme Court of the United States explained that, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 (2007). However, a

plaintiff's ground for relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Id*. Accordingly, a complaint must be dismissed if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1950 (2009).

### III.

Defendants first contend that there is no basis for liability under § 1983 against Defendants Molitoris or Proctor since Plaintiff makes no particular allegation as to their involvement in the events giving rise to this action. In his *Memorandum contra*, Doc. No. 12, at 4, Plaintiff bases liability against these Defendants on their ultimate responsibility for the actions of their subordinates. As Defendants point out, however, liability under § 1983 cannot be predicated on a theory of *respondeat superior*. *See Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). "There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it." *Taylor v. Michigan Dept. of Corrections*, 69 F.3d 76, 81 (6th Cir. 1995), quoting *Bellamy*, 729 F.2d at 421. "[L]iability under § 1983 must be based on active unconstitutional behavior and cannot be based upon 'a mere failure to act.'" *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999), quoting *Salehpour v. Univ. of Tennessee*, 159 F.3d 199, 206 (6th Cir. 1998).

In this case, Plaintiff's *Complaint* is devoid of any allegation against Defendants

Molitoris or Proctor that demonstrates active unconstitutional behavior on their part in connection with Plaintiff's claims. Indeed, Plaintiff concedes that liability against these Defendants is based simply on their roles as supervisors. Since this is an inappropriate theory of liability, the Court concludes that Plaintiff has failed to state a claim for relief against Defendants Molitoris and Proctor.

Defendants further contend that Plaintiff's § 1983 claims are untimely. *See Browning v. Pendleton*, 869 F.2d 989, 992 (6th Cir. 1989) (holding that "the appropriate statute of limitations for 42 U.S.C. § 1983 civil rights actions arising in Ohio is contained in R.C. § 2305.10, which requires that actions for bodily injury be filed within two years after their accrual."). According to Defendants, the majority of instances of alleged discrimination cited in the *Complaint* occurred more than two years before the filing of this action on August 13, 2010. Plaintiff argues that the claim is not time-barred because the instances of alleged discrimination "were part of a continuing violation and constitute the hostile work environment under which Plaintiff worked." *Memorandum contra*, at 5. Plaintiff insists that his claims under §1983 are not premised on individual discrete acts of discrimination. *Id.*

In *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 118 (2002), the United States Supreme Court held that discriminatory acts that fall outside the limitations period but which contribute to the allegedly hostile nature of a work environment may be considered for purposes of determining liability on a Title VII hostile work environment claim so long as there is additional actionable conduct that occurs within the limitations period. In contrast, "discrete discriminatory acts" such as termination, failure to promote, denial of transfer or refusal to hire, each start "a new clock for filing charges alleging that act." *Id.* at 113-14. The different rule for

6

hostile work environment claims is premised on the reality that such a claim involves repeated conduct, requiring the plaintiff to demonstrate that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe and pervasive to alter the conditions of the [plaintiff's] employment and create an abusive working environment." *Id.* at 115-16 (citations omitted). The Sixth Circuit applies this same rule to claims brought under § 1983. *Sharpe v. Cureton*, 319 F.3d 259 (6th Cir. 2003).

In this case, Plaintiff cites four instances of alleged discrimination that allegedly occurred more than two (2) years prior to the filing of the *Complaint* and at least one instance that allegedly occurred within the limitations period (*i.e.,* the instance of counseling on June 28, 2010). *Complaint*, at ¶ 23).[3] In the Court's view, these allegations are sufficient to support a theory of continuing violation. Plaintiff's claim under §1983 is therefore not time-barred.

Alternatively, Defendants argue that Plaintiff's *Complaint* does not allege facts sufficient to support a claim of hostile work environment. Defendants also argue that Plaintiff fails to allege facts demonstrating that he has suffered a materially adverse employment action.

First, with respect to the hostile work environment claim, Defendants argue that the counseling that Plaintiff allegedly received on June 28, 2010 is "too remote in time, context and quality from other actions [Plaintiff] might [claim] to be considered part of the same 'hostile environment.'" *Defendants' Motion to Dismiss*, at 9. Defendants further argue that counseling is a "usual employee performance evaluative process" and cannot constitute a hostile act. *Id.*, at 10. Finally, Defendants argue that Plaintiff fails to allege "any activity whatsoever which rises

---

[3]In his *Complaint*, Plaintiff alleges that he was "harassed" and "subjected to unequal terms and conditions of employment on numerous occasions based upon his religious beliefs and the fact he had to . . . have his flexible work schedule approved so he could participate in his religious ceremonies on Fridays . . . ." *Complaint*, at ¶ 25. It is unclear whether these instances of alleged discrimination occurred within the limitations period.

7

to the level of an objectively hostile work environment . . . ." *Id.*, at 14.

In order to establish a hostile work environment claim based on race, religion or national origin, a plaintiff must first show that (1) he is a member of a protected class; (2) he was subjected to unwelcome harassment; (3) the harassment was based on race, religion or national origin; (4) the harassment unreasonably interfered with his work performance by creating an intimidating, hostile or offensive work environment; and (5) the employer is liable.[4] *Ejikeme v. Violet*, 307 Fed. Appx. 944, 949 (6th Cir. 2009), citing *Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir. 1999). In determining whether an environment is one that a reasonable person would find to be hostile, a court must consider all the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993). The Court notes that the elements of a hostile work environment claim are the same for purposes of both Title VII and § 1983. *See Rabidue v. Osceola Ref. Co.*, 805 F.2d 611 (6th Cir. 1986).

In this case, the Court finds the allegations in Plaintiff's *Complaint* as to the hostile work environment claim sufficient to survive the Defendants' Rule 12(b)(6) motion. Although Defendants argue that the counseling Plaintiff received in June 2010 is too removed from other events alleged in the *Complaint* to constitute a "hostile work environment," Plaintiff does allege that he was harassed on a "continual" basis on "numerous occasions." *See Complaint*, at ¶¶ 23,

---

[4] An employer is vicariously liable for harassment by supervisors. *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 803 (6th Cir. 1994). The employer can, however, raise an affirmative defense to liability by establishing: (1) that it exercised reasonable care to prevent and correct promptly any harassing behavior; and (2) that the employee unreasonably failed to take advantage of any preventive or corrective opportunities. *Hafford v. Seidner*, 183 F.3d 506, 513 (6th Cir. 1999).

8

25.  Thus, whether or not the June 2010 event is too attenuated from other events cannot be determined until further evidence is presented as to the extent of the allegedly continuous harassment.  At this juncture, the Court merely concludes that the claim is sufficiently pled.

As to the issue of adverse employment action, since Plaintiff is not claiming discrimination based on one discrete act, Plaintiff's failure to plead an adverse action in the *Complaint* is not fatal to his claim.  Plaintiff's hostile work environment claim does, however, require proof that the discrimination was so severe or pervasive as to alter the conditions of Plaintiff's employment.  *See Hafford v. Seidner*, 183 F.3d 506.  This determination, too, must await further development of the record.  At this stage of the action, the Court finds the allegations of hostile work environment as contained in the *Complaint* sufficient to survive Defendants' *Motion to Dismiss*.

Defendants also move to dismiss Plaintiff's retaliation claim to the extent that it is asserted under § 1983.  As Defendants correctly observe, Title VII provides the exclusive remedy when the retaliation alleged stems from violation of a right protected under Title VII (here, the filing of charges of discrimination).  *See Day v. Wayne County Bd. of Auditors*, 749 F.2d 1199, 1204 (6th Cir. 1984).  Plaintiff concedes as much in his *Memorandum contra*, at 7.

Defendants also move to dismiss Plaintiff's claim for violation of procedural due process under § 1983.  According to Plaintiff, his suspensions from employment (totaling 18 days) for rules violations deprived him of a property interest in his employment.  In opposing dismissal of his claim, Plaintiff states that, "presumably," he was given a hearing prior to each suspension, but he argues that discovery is necessary to confirm this.  *Memorandum contra*, at 7.

In general, due process requires that a deprivation of property "be preceded by notice and

9

opportunity for hearing appropriate to the nature of the case." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985), quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950).  In the context of a public employee, "[t]he opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement."  *Id.* at 546.

In this case, it is unclear whether and to what extent Plaintiff was able to present his position in response to the suspensions imposed.  This claim must therefore await further development of the record.  The Court disagrees with Defendants' assertion that, because Plaintiff states that he "presumably" received a hearing, no due process claim exists.  At this stage of the proceedings, the Court concludes that the § 1983 procedural due process claim is sufficient to survive Defendants' motion to dismiss.

Defendants also move to dismiss Plaintiff's claim for violation of substantive due process.  According to Defendants, substantive due process does not ordinarily protect public employment.  Furthermore, since Plaintiff remains employed by ODOT, Defendants contend that Plaintiff has no basis for relief under a theory of denial of substantive due process.  Plaintiff argues that this claim requires discovery in order to assess its viability.  *Memorandum contra*, at 5.

The Court concludes that Plaintiff's substantive due process claim fails to state a claim for relief.  Public employees do not enjoy a substantive due process right to public employment. *Sutton v. Cleveland Bd. of Educ.*, 958 F.2d 1339, 1351 (6th Cir. 1992).  Thus, dismissal of this claim is appropriate.

Defendants also move to dismiss Plaintiff's civil conspiracy claim on the basis that it is

conclusory and because Defendants, as agents of the same entity, cannot conspire with themselves.  As Defendants point out, it is unclear from a reading of the *Complaint* whether Plaintiff's claim is brought pursuant to 42 U.S.C. § 1985 and Plaintiff does not clarify the issue in his *Memorandum contra*. *See Memorandum contra*, at 9.  In order to establish a claim of conspiracy to deprive one of his civil rights under § 1985(3),[5] a Plaintiff must show a conspiracy to deprive him of equal protection or equal privileges and immunities, an act in furtherance of the conspiracy and injury resulting therefrom.  *See Volunteer Medical Clinic, Inc. v. Operation Rescue*, 948 F.2d 218 (6th Cir. 1991).  Defendants correctly observe that "conspiracy claims must be pled with some degree of specificity. . . . [V]ague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim . . . ." *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987) (citation omitted).  Furthermore, in accordance with the intra-conspiracy doctrine, employees of a corporation or governmental entity cannot generally be deemed to have conspired with themselves or with their employer.  *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist.*, 926 F.2d 505, 509 (6th Cir. 1991).  An exception exists, however, if fellow employees acted outside the scope of their employment relationship. *Johnson v. Hills & Dales General Hosp.*, 40 F.3d 837, 841 (6th Cir. 1994).

---

[5]The statute provides, in relevant part:
(3) Depriving persons of rights or privileges
If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws . . . if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for recovery of damages occasioned by such injury or deprivation, against one or more of the conspirators.

42 U.S.C. § 1985(3).

In this case, Plaintiff makes no allegation in his *Complaint* as to actions outside the scope of Defendants' employment. In addition, Plaintiff's conspiracy claim is pled in wholly conclusory terms, even lacking identification as to whether it is pursued under federal law. For these reasons, the Court concludes that dismissal of the civil conspiracy claim is warranted.

Defendant also moves to dismiss any claim brought under the Age Discrimination in Employment Act ["ADEA"], 29 U.S.C. § 621, *et seq.*, arguing that Plaintiff has not exhausted administrative remedies with respect to such a claim.[6] Plaintiff concedes that he did not identify age as a basis of discrimination on the forms that he filed with the EEOC. Nevertheless, Plaintiff argues that the claim of age discrimination grew out of the investigation of other forms of discrimination formally alleged. *Memorandum contra*, at 9-10.

It is beyond dispute that a charge of discrimination with the EEOC is a jurisdictional prerequisite to filing a civil action in this Court. *See Strouss v. Mich. Dep't of Corr.,* 250 F.3d 336, 342 (6th Cir. 2001); *Vinson v. Ford Motor Co.*, 806 F.2d 686, 688 (6th Cir. 1986). However, "where facts related with respect to the charged claim [of discrimination] would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim." *Weigel v. Baptist Hosp. of East Tennessee*, 302 F.3d 367, 380 (6th Cir. 2002).

In reviewing Plaintiff's EEOC charges, the Court cannot conclude that the EEOC was on notice of a claim of age discrimination. Plaintiff's March 14, 2006 filing makes no reference to age. Rather, Plaintiff alleged that he was "disciplined due to consideration of my race, Asian, national origin, India, and religion, Muslim" in connection with denial of sick leave. *See* Exhibit

---

[6] The Court notes that, although Plaintiff makes reference to discrimination on the basis of age in his *Complaint,* Plaintiff does not specifically refer to the ADEA.

A, attached to *Defendants' Motion to Dismiss*. Plaintiff's November 6, 2006 filing identified "excessive harassment and unreasonable, inhumane and demeaning treatment" by supervisors as a result of previous filings of charges of discrimination. Again, this charge reflects no indication of animus on the basis of age. Exhibit B, *Id.* Similarly, Plaintiff's May 11, 2007 charge of discrimination alleged that Plaintiff was "singled out" and treated unfairly as a result of certain performance evaluations. Exhibit C, *Id.* In addition, Plaintiff's December 13, 2007 charge of discrimination concerned the alleged denial of vacation leave and counseling for working beyond normal hours, allegedly resulting from Plaintiff's previous filings of discrimination. Exhibit D, *Id.* In the Court's view, an investigation of discrimination on the basis of age could not have been expected to arise from these charges. Thus, any claim that Plaintiff brings pursuant to the ADEA is not properly before this Court. The Defendants' *Motion to Dismiss* this claim is meritorious.

Defendants also move to dismiss Plaintiff's claims under Title VII to the extent that he asserts them against the individual Defendants. Defendants are correct in noting that a supervisor or fellow employee is not an "employer" for purposes of Title VII. *Wathen v. General Electric Co.,* 115 F.3d 400, 404-05 (6th Cir. 1997). Accordingly, Defendants' *Motion to Dismiss* these claims will be granted.

The Defendants also move to dismiss Plaintiff's claims under Ohio law. First, Defendants argue that the claims against ODOT are barred by the Eleventh Amendment to the United States Constitution. Second, Defendants argue that Plaintiff's state law claims against the individual Defendants are barred by the immunity conferred by R.C. § 9.86.

As to Defendant ODOT, which is an agency of the State of Ohio, the Eleventh

Amendment confers immunity from suit in this Court unless the State has consented to suit or Congress has abrogated its immunity. *See Seminole Tribe v. Florida*, 517 U.S. 44, 54 (1996). There is no consent to suit in this case, nor has there been a Congressional abrogation of immunity. Thus, the Court agrees with Defendant ODOT that it is immune from Plaintiff's state law claims.[7]

With respect to the individual Defendants, the Court agrees that they cannot be sued in their individual capacities for claims arising under Ohio law until the Ohio Court of Claims considers the immunity issue. In *Haynes v. Marshall*, 887 F.2d 700, 705 (6th Cir. 1989), the Sixth Circuit explained that "a federal court exercising pendent jurisdiction sits as a court of the forum state and is bound to apply its substantive law." Section 9.86 of the Revised Code requires that "as a condition precedent to asserting a cause of action against a state employee in his individual capacity, the Court of Claims must first determine that the employee is not entitled to immunity . . . ." *Id.* For this reason, Plaintiff cannot proceed with his state law claims against the individual Defendants.

Finally, Defendants argue that they are entitled to qualified immunity for monetary liability arising from any constitutional claim. The doctrine of qualified immunity provides that, in civil suits for monetary damages, government officials acting in their official capacity and performing discretionary functions are generally shielded from liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Gardenhire v. Schubert*, 205 F.3d 303, 310-11 (6th Cir. 2000), citing

---

[7]In his *Memorandum contra*, Plaintiff appears to argue that, because he seeks injunctive relief in this action, ODOT is not immune from suit. There is, however, no prospective relief exception to Eleventh Amendment immunity for state law claims. *See Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984).

*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity involves a three-step inquiry. The Court must first determine whether, based on applicable law, the facts viewed in the light most favorable to Plaintiff show a constitutional violation; second, whether the violation was of a clearly established right of which a reasonable person would have known; and third, whether the Plaintiff has offered sufficient evidence "to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Feathers v. Aey*, 319 F.3d 843, 847 (6th Cir. 2003) (quotations and citations omitted).

At this juncture in the action, the Court cannot determine whether a constitutional violation has occurred. Thus, in the Court's view, it is premature to determine whether Defendants are entitled to qualified immunity on Plaintiff's remaining §1983 claims. The defense may be renewed at a later stage of this action, upon further development of the record. The Defendants' request for qualified immunity is therefore denied.

## IV.

**WHEREUPON**, Defendants' *Motion to Dismiss*, **Doc. No. 3**, is **GRANTED in part** and **DENIED** in part. To summarize, Plaintiff's claims under state law, *i.e.*, discrimination and hostile work environment under R.C. §4112. 02 *et seq.*, violations of public policy, civil conspiracy, defamation and bad faith, are **DISMISSED.** Plaintiff's federal claims of age discrimination under the ADEA are **DISMISSED.** Plaintiff's claims of discrimination or hostile work environment on the basis of national original, race, religion and retaliation under Title VII survive except that such claims as against the individual defendants are **DISMISSED.** Plaintiff's claims, if any, of retaliation under §1983 are **DISMISSED.** Plaintiff's claims under

42 U.S.C. §§1983 and 1985 of denial of substantive due process and civil conspiracy are **DISMISSED**. Plaintiff's claims under § 1983 of hostile work environment and procedural due process survive, except that such claims as against the Defendant ODOT and Defendants Molitoris and Proctor are **DISMISSED**.

    **IT IS SO ORDERED**.


**June 2, 2011**　　　　　　　　　　　　　　_s/ Norah McCann King_
**DATE**　　　　　　　　　　　　　　　　　**NORAH McCANN KING**
　　　　　　　　　　　　　　　　　　　　　**UNITED STATES MAGISTRATE JUDGE**